IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Case No. 13-cv-02093-PAB-DW

FRANK CALER,

    Plaintiff,

v.

BROOKS BROWN, in his individual and official capacities,
TJ FITZWATER, in his individual and official capacities,
RICHARD RIVERA, in his individual and official capacities, and
LOGAN GHOLSON, in his individual and official capacities,

    Defendants.

---

## ORDER

---

This matter is before the Court on the Motion to Dismiss [Docket No. 11] filed by defendants Richard Rivera and Logan Gholson[1] and the Motion to Strike Opposition to Defendants "12(b)(6) Motion to Dismiss" [Docket No. 20] filed by plaintiff Frank Caler.[2] Plaintiff asserts subject matter jurisdiction under 28 U.S.C. § 1331 and § 1367. Docket No. 1 at 2, ¶ 1. In light of plaintiff's pro se status, the Court must liberally construe his filings. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 n. 3 (10th Cir. 1991).

---

[1] All references to "Defendants" in this order are to Officers Rivera and Gholson unless otherwise indicated.

[2] Mr. Caler passed away on July 1, 2014. Docket No. 42-1. Defendants do not claim that plaintiff's claims are extinguished upon his death and the Court finds no basis for so concluding. *See* Colo. Rev. Stat. § 13-20-101(1); *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) ("survival of a § 1983 action is determined by looking to state law").

**I. BACKGROUND**[3]

On August 11, 2012, plaintiff was driving a pickup truck in Pagosa Springs, Colorado en route to his son's home. Docket No. 1 at 4, ¶ 8. Plaintiff noticed red and blue flashing lights coming from a vehicle behind him. *Id.* at 4, ¶ 10. Plaintiff proceeded for approximately 45 seconds before stopping in the driveway of his son's home and the vehicle followed. *Id.* After stopping, Officer Brooks Brown exited the vehicle and approached plaintiff. *Id.* at 4, ¶¶ 12-13. Officer Brown asked plaintiff why he did not stop immediately upon seeing flashing lights, but plaintiff did not answer and instead read from a pocket version of the United States Constitution. *Id.* Shortly thereafter, Sergeant TJ Fitzwater arrived and asked plaintiff to provide his name and "personal papers." *Id.* at 5, ¶¶ 16-17. Rather than answer or provide any documentation, plaintiff continued to read from his pocket copy of the Constitution. *Id.* at 5, ¶ 17. Plaintiff claims that neither officer provided any "bona-fide document by which [plaintiff] could identify [the officers]." *Id.* Officer Brown and Sergeant Fitzwater placed plaintiff in handcuffs and transported him to the Archuleta County Detention Center in the back seat of a police vehicle. *Id.* at 6, ¶¶ 18-19. Plaintiff claims that he bumped his head while being forced into the back of the police vehicle and that, due to the position of the front seat, he was unable to sit upright, resulting in severe pain. *Id.* at 7, ¶ 21. Upon arriving at the Archuleta County Detention Center, plaintiff was turned over to Officers Rivera and Gholson "who also acted without reasonable objectiveness in concert with [Officer] Brown and [Sergeant] Fitzwater." *Id.* at 7, ¶ 23. Officer Rivera

---

[3]For purposes of resolving Defendants' motion pursuant to Fed. R. Civ. P. 12(b)(6), the following facts are taken from plaintiff's complaint and are presumed true.

twice demanded that plaintiff place his head against a wall, the surface of which was rough, and plaintiff complied, but claims he did so out of fear. *Id.* Officer Rivera demanded that plaintiff spread his legs and conducted a search of plaintiff's person, patting down plaintiff's legs, reaching into plaintiff's pants pockets and taking plaintiff's "personal papers and effects." *Id.* at 8, ¶ 24. Plaintiff was placed in a holding cell and informed that he would be held over the weekend. *Id.* An hour later, Officer Brown gave plaintiff two written citations and released him. *Id.* at 8, ¶ 26.

Plaintiff generally claims that all defendants violated his constitutional rights by asking him for personal information. *Id.* at 5. He admits that he resisted Officer Brown's and Sergeant Fitzwater's requests to provide such information, but claims that he did so in an attempt to protect his constitutional rights. *Id.* at 8. Plaintiff asserts nine claims for relief. Pursuant to 42 U.S.C. § 1983, plaintiff brings claims alleging a violation of his rights to freedom of speech and right to be free from unreasonable search and seizure of his person and effects, citing the First, Fourth, Fifth, and Fourteenth Amendments. *Id.* at 9-12. Plaintiff also brings state law claims for assault and battery, negligence, false imprisonment, and intentional infliction of mental distress. *Id.* at 13-14. Defendants move to dismiss all claims asserted against them, arguing that plaintiff's § 1983 claims should be dismissed for failure to state a claim and that plaintiff's state law claims are barred by the Colorado Governmental Immunity Act ("CGIA"), Colo. Rev. Stat. § 24-10-101 *et seq.* Docket No. 11 at 6-9. In response, plaintiff filed a document styled a Motion to Strike [Docket No. 20] and a document styled a Verified Response to Defendants' Motion to Dismiss; Reply to Defendants'

Answer to Plaintiff Complaint; Motion for Default Judgment [Docket No. 32]. The Court will consider both documents to the extent they contain substantive responses to Defendants' motion to dismiss.

## II. MOTION TO STRIKE

Plaintiff invokes Fed. R. Civ. P. 12(f) in arguing that Defendants' motion to dismiss should be stricken. Docket No. 20 at 3. Plaintiff does not identify any basis for striking Defendants' motion under Rule 12(f), and the Court is otherwise satisfied that Defendants' motion was properly filed. Thus, plaintiff's motion to strike will be denied.

## III. MOTION TO DISMISS

### A. 42 U.S.C. § 1983 Claims

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted).

#### *1. Individual Capacity Claims*

Defendants invoke the doctrine of qualified immunity in response to plaintiff's claims against them in their individual capacity. "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise

power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity provides a defense to trial and the other burdens of litigation such as discovery, rather than just liability. *See Saucier v. Katz,* 533 U.S. 194, 200 (2001), *overruled on other grounds by Pearson*, 555 U.S. 223. Therefore, a court is to resolve questions of qualified immunity at the earliest possible stage of litigation. *Anderson v. Creighton,* 483 U.S. 635, 646 n.6 (1987). However, a plaintiff facing a qualified immunity challenge still does not have a heightened pleading standard. *Currier v. Doran,* 242 F.3d 905, 916-17 (10th Cir. 2001); *see id.* at 914 (although qualified immunity protects public officials "from the costs associated with defending against lawsuits, particularly baseless ones, it d[oes] not follow that a defendant's claim of qualified immunity c[an] always be resolved before at least some discovery [is] conducted.") (citing *Crawford-El v. Britton*, 523 U.S. 574, 591-93 & 593 n.14 (1998)).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Upon a public official's assertion of a qualified immunity defense, plaintiff bears a "heavy burden" under a two-pronged analysis. *Buck v. City of Albuquerque,* 549 F.3d 1269, 1277 (10th Cir. 2008). Under the first prong of the analysis, the plaintiff is required to "establish that the defendant's actions violated a constitutional or statutory right." *Smith v. Cochran,* 339 F.3d 1205, 1211 (10th Cir. 2003) (quoting *Holland ex rel.*

*Overdorff v. Harrington,* 268 F.3d 1179, 1185 (10th Cir. 2001)). The determination of whether a violation occurred under the first prong of the qualified immunity analysis turns on substantive law regarding that right. *See, e.g., Casey v. City of Fed. Heights,* 509 F.3d 1278, 1282-83 (10th Cir. 2007). Under the second prong, the plaintiff must show that the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). For reasons explained below, the Court finds that plaintiff has failed to satisfy the first prong and, as such, that Defendants are entitled to dismissal.

Although plaintiff invokes the First, Fourth, Fifth, and Fourteenth Amendments, plaintiff alleges no facts indicating that Defendants violated his free speech rights and plaintiff does not sufficiently allege a due process violation.[4] As such, the Court construes his claim as an allegation of unreasonable search and seizure in violation of the Fourth Amendment.[5] The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . shall not be violated." U.S. Const. amend. IV. Searches are subject to Fourth Amendment protection "when the government violates a

---

[4] Claims regarding an individual's treatment during "the period of time between an unlawful arrest and the institution of legal process forms one constitutional claim, arising under the Fourth Amendment." *Mondragón v. Thompson*, 519 F.3d 1078, 1083 (10th Cir. 2008). Claims regarding an individual's treatment after the institution of process arise under the Due Process Clause. *Id.* As such, plaintiff's claim is properly characterized as a Fourth Amendment claim.

[5] The Fourth Amendment applies to state actors by way of incorporation into the due process clause of the Fourteenth Amendment. *See United States v. Rodriguez-Rodriguez*, 550 F.3d 1223, 1225 n.1 (10th Cir. 2008) (citing *Mapp v. Ohio*, 367 U.S. 643, 655 (1961)). For ease of reference, the Court refers herein only to the Fourth Amendment.

subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. U.S.*, 533 U.S. 27, 33 (2001). A "seizure" for the purposes of the Fourth Amendment occurs when a government actor terminates one's freedom of movement through means intentionally applied. *See Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989); *Scott v. Harris*, 550 U.S. 372, 381 (2007).

In *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001), the Supreme Court recognized that, if an officer "has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." The plaintiff in *Atwater* was arrested for failure to comply with seat belt laws. The Court held that:

> Atwater's arrest was surely "humiliating," as she says in her brief, but it was no more "harmful to . . . privacy or . . . physical interests" than the normal custodial arrest. She was handcuffed, placed in a squad car, and taken to the local police station, where officers asked her to remove her shoes, jewelry, and glasses, and to empty her pockets. They then took her photograph and placed her in a cell, alone, for about an hour, after which she was taken before a magistrate, and released on a $310 bond. The arrest and booking were inconvenient and embarrassing to Atwater, but not so extraordinary as to violate the Fourth Amendment.

*Id.* at 354-55. In *Petersen v. Farnsworth*, 371 F.3d 1219, 1221-22 (10th Cir. 2004), plaintiff voluntarily appeared at a county jail pursuant to a summons and was placed into custody. The plaintiff brought § 1983 claims alleging that the booking process violated the Fourth Amendment. Regarding the issue of seizure, the Tenth Circuit noted that the amount of force used to restrain the plaintiff was minimal. *Id.* at 1223. As a result, the court concluded that plaintiff failed to show that "defendants used an extraordinary amount of force in applying the handcuffs or in placing Petersen in the

holding cell, and Petersen was only detained for approximately one hour." *Id.* Regarding the issue of a search, the court held that "police may search an arrestee and inventory his personal effects at the station house following an arrest, prior to confining him." *Id.* at 1224 (citing *Illinois v. Lafayette*, 462 U.S. 640 (1983)). The Tenth Circuit determined that defendants had a legitimate interest in verifying the plaintiff's identity, "ensuring that he did not bring any dangerous items into the jail, and making an inventory of the items taken from [him] . . . to deter a false claim of theft." *Id.*

Here, plaintiff's allegations fail to rise to the level of unreasonable search and seizure with respect to the actions taken by Defendants.[6] The fact that plaintiff may have been forced to place his head against a rough wall and was placed into a cell for an hour does not rise to the level of unreasonable seizure. With respect to the search of his person, plaintiff's allegations provide no indication that the search was more intrusive than a simple pat down of plaintiff's person and search of plaintiff's pockets as part of the booking process. *Cf. Chapman v. Nichols*, 989 F.2d 393, 399 (10th Cir. 1993) (finding blanket strip search policy unreasonable). Plaintiff's responses to Defendants' motion fail to identify any allegations or legal authority to conclude

---

[6]"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (quotations omitted). "Supervisory status alone does not create § 1983 liability." *Id.* Defendants argue that plaintiff has failed to allege personal involvement with respect to Officer Gholson. Docket No. 11 at 8. The Court agrees. The only factual allegation relating to Officer Gholson is that he acted "in concert" with Officer Brown and Sergeant Fitzwater. Docket No. 1 at 7, ¶ 23. This is insufficient to show that Officer Gholson was personally involved in depriving plaintiff of his constitutional rights under § 1983, regardless of whether plaintiff seeks to hold Officer Gholson liable personally or in a supervisory capacity. *See Gallagher*, 587 F.3d at 1069. Plaintiff has failed to state a § 1983 claim against Officer Gholson in his individual capacity.

otherwise. Accordingly, the Court determines that plaintiff has failed to state a claim that Defendants violated plaintiff's fourth amendment rights. The Court will grant Defendants' motion to dismiss plaintiff's § 1983 claims against Defendants in their individual capacities.

### 2. Official Capacity Claims

The Court turns to plaintiff's claims against Defendants in their official capacities, which, under § 1983, are considered suits against Defendants' employer, the Town of Pagosa Springs. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978). Because plaintiff has failed to state a claim that Defendants committed a constitutional violation, the Court will also dismiss plaintiff's § 1983 claims asserted against Defendants in their official capacities. *See Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1317 (10th Cir. 1998) (holding that plaintiff asserting municipal liability claim must prove that a municipal employee committed a constitutional violation).

### B. State Law Claims

Having dismissed plaintiff's claims arising under federal law against Defendants and, in a separate order entered concurrently, having dismissed plaintiff's claims arising under federal law against Officer Brown and Sergeant Fitzwater, the Court next addresses the issue of whether it should exercise jurisdiction over plaintiff's remaining claims, which are based upon state law. In every case and at every stage of the proceeding, a federal court must satisfy itself as to its own jurisdiction, even if doing so requires sua sponte action. *Citizens Concerned for Separation of Church & State v. City & Cnty. of Denver*, 628 F.2d 1289, 1297, 1301 (10th Cir. 1980). While courts may

exercise supplemental jurisdiction over state law claims if there is otherwise a jurisdictional basis for doing so, 28 U.S.C. § 1367(c)(3) states that a court may decline to exercise jurisdiction over such claims if "the district court has dismissed all claims over which it has original jurisdiction." When § 1367(c)(3) is implicated in the Tenth Circuit, courts are advised to dismiss pendent state law claims "'absent compelling reasons to the contrary.'" *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) (reversing the district court's grant of summary judgment on state law claims); *Endris v. Sheridan Cnty. Police Dep't*, 415 F. App'x 34, 36 (10th Cir. 2011) ("any state-law claims for assault and battery or mental and emotional injury were inappropriate subjects for the exercise of pendent jurisdiction where all federal claims had been dismissed"). *But see Henderson v. Nat'l R.R. Passenger Corp.*, 412 F. App'x 74, 79 (10th Cir. 2011) (finding no abuse of discretion in trial court's decision to retain jurisdiction over state law claims after plaintiff voluntarily dismissed claims arising under federal law). Finding no compelling reason here to retain jurisdiction, the Court will dismiss plaintiff's remaining claims without prejudice. *See* Colo. Rev. Stat. § 13-80-111 (permitting claims properly commenced within the statute of limitations to be re-filed if involuntarily dismissed because of lack of jurisdiction); *Dalal v. Alliant Techsystems, Inc.*, 934 P.2d 830, 834 (Colo. App. 1996) (interpreting 28 U.S.C. § 1367(d) as tolling the statute of limitations while claim is pending in federal court); *see also City of Los Angeles v. Cnty. of Kern*, 328 P.3d 56, 2014 WL 3030368, at *3 (Cal. July 7, 2014) (noting that interpretations of § 1367(d) vary between jurisdictions).

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants' Motion to Dismiss [Docket No. 11] is **GRANTED**. It is further

**ORDERED** that plaintiff's 42 U.S.C. § 1983 claims against Richard Rivera and Logan Gholson are dismissed with prejudice. It is further

**ORDERED** that, given the Court's concurrent dismissal of plaintiff's federal causes of action against defendants Brown and Fitzwater, plaintiff's state law claims against Richard Rivera and Logan Gholson are dismissed without prejudice for lack of subject matter jurisdiction. It is further

**ORDERED** that plaintiff's Motion to Strike [Docket No. 20] is **DENIED.**

DATED September 25, 2014.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge